Mr. Hedstrom, I know that you're court-appointed for Mr. Lauture and on behalf of the court, I want to thank you for your service not only to him, but to us. We really do appreciate it. It's been a pleasure and an honor and I appreciate you appointing me, so thank you. Good morning, Your Honors. May it please the court, my name is Ryan Hedstrom and I represent the petitioner, Emanuel Lauture. Your Honors, we're here on a petition from a decision of the Board of Immigration Appeals. The BIA ordered Mr. Lauture removed from the United States having determined that his prior Florida burglary conviction qualified as a crime involving moral turpitude under Section 237 of the Immigration and Nationality Act. And we'd ask this court to vacate the BIA's decision for two independent reasons. First, Florida's burglary statute, Section 810.02, is both overbroad and indivisible and therefore is not a CIMT under the pure categorical approach. And second, even if Section 810.02 is divisible, such that it's appropriate to apply the modified categorical approach to consider Mr. Lauture's plea to the statute's second degree sentence enhancement for burglary of an unoccupied dwelling specifically, Florida burglary of an unoccupied dwelling is likewise not a CIMT. So to get straight to the heart of the issue, Your Honors, in the limited time that I have, I think this court's decision, at least with respect to my first argument that Florida burglary is not a CIMT under the pure categorical approach, really turns on the divisibility of Section 810.02's locational element, the dwelling structure or conveyance language in Section 810.02. Mr. Hedstrom, it appeared to me that before the immigration judge and the board, Mr. Lauture conceded that he was convicted of burglary of an unoccupied dwelling under Section 810.023b. And now it seems to me you're arguing, you're making a broader argument about Section 810.02. Was that argument exhausted before the board? I don't think the argument can be exhausted because I think under the categorical inquiry, and I think this court can look to the United States Supreme Court's decision in Mathis, and this is actually, I think, an argument that the government raised in their response brief was that Mr. Lauture acknowledged before the BIA that he was convicted under subsection 3b. I think that that sort of argument is foreclosed by Mathis, which says the only time that we can consider a fact is if that fact is an element, a necessary element of the offense, as opposed to being a means. So, for example, in Mathis itself, the defendant was convicted of Iowa burglary, right? And the Shepard documents in that case revealed that he was actually convicted of burglaring a structure and not a vehicle. And so under the Iowa burglary statute, it says burglary is unlawful entry into a structure, including, and it delineates a bunch of different sort of locational alternatives, right? And so what Mathis said is, look, you can't consider the fact that if we can see from the judgment, right, that he was convicted of burglaring a structure and not something like a vehicle that's overbroad compared to ACCA burglary. But you can't look at that court unless you find that that is definitively an essential element of the crime. And if it's not, then you have to do what the categorical inquiry requires, and that's assume that the conviction rested on nothing more than the least of the acts criminalized under the statute. So in that case, it was something that was beyond ACCA burglary. And here, I would submit that the least of the acts criminalized under Florida burglary are not residential burglaries, burglaries of the dwelling, but burglaries of things like other structures and conveyances like cars, like motor vehicles, like boats. And so for that reason, I don't think we can say, excuse me, that, look, he acknowledged this. So we can go ahead and just do a deep dive into subsection 3B. We have to first do the divisibility analysis and say, is that an element or is it a means? And I think that Florida law, authoritative sources of Florida law confirm that the locational alternatives in statute are means and not elements. And I think we can look to, I mean, math sets out a roadmap, right, of sort of what do you look at these authoritative sources of state law when you're determining elements versus means. First, you look at the language of the statute, right? The language of the statute doesn't do much to tell us whether they're elements or means. It sets them out in the alternative, which, of course— Ezra, let me ask you a question. Are there any BIA decisions that deal with whether or not a burglary statute whose locational elements are other conveyances, curtilage, structures, cars, vehicles, boats, et cetera, constitute or doesn't constitute a crime involving moral turpitude? Yes, so there is an unpublished decision called Matter of Vincent in which the board held that burglary of a structure under Florida law under Section 810.02 was not a crime involving moral turpitude. You have Matter of Lewiston, which is a published BIA decision, right, and it said that burglary of an occupied dwelling is a crime involving moral turpitude. So the statute's overbroad in the sense that there are certain—there's certain conduct that, you know—let me back up. Let me put it this way. The statute criminalizes conduct that both does and doesn't involve moral turpitude, so it's overbroad. And so then to dive in and say, okay, well, can we figure out which one he was convicted of? It has to be divisible, and there's no board precedent that says Section 810.02 is divisible. There's no Eleventh Circuit precedent that says Florida burglary is divisible. Are you familiar with Matter of Lusant from 2009? Yes. So that was issued before the attorney general revoked the prior attorney general's definition of a crime involving moral turpitude. Sure. But for whatever—and so it applied a different standard in some respects, right, possibly. That case says, as I read it, that BIA decision said that a conviction for burglary of an unoccupied dwelling under 810.02.3a was a crime involving moral turpitude. Is that the way you read that decision? So whatever it's worth? No, I don't. I read it as saying that Florida burglary of an occupied dwelling under subsection—of subsection 3a of the statute is a crime involving moral turpitude. In this case—and this sort of brings me to my second point, I guess. So let's assume for the purposes of the remainder of this three-and-a-half minutes that I have that the court finds that Florida burglary under Section 810.02 is divisible, such that you can hone in on subsection 3b and say, okay, well, we're going to look at burglary of an unoccupied dwelling specifically. I think because of the way that Florida defines what a dwelling is, it is qualitatively different from every single other board or federal decision that's found burglary, residential burglary specifically, to be a crime involving moral turpitude. So under the ACCA, it's a little easier when we're talking about comparing Florida burglary to federal generic burglary. You line the elements up and you say, do they match or not, and if they don't, then it's overbroad, right? Your argument is that, I guess, under Florida law, when you enter a dwelling, of course, the perpetrator doesn't know at that time, probably, whether it's occupied or not. The perpetrator just goes in. And so I guess if it happens to be occupied, he's committed a crime of moral turpitude. If it's just his luck that it's not at that moment occupied, it's not. Is that the gist of it? No, I don't think that's my argument, Your Honor. I don't think occupancy is the critical decision. I think occupancy is sort of a red herring in the sense that I think what's more important is how Florida law defines what a dwelling is. And so it's a structure or conveyance that is designed for human nighttime habitation. Let's assume, for sake of discussion, a dwelling that's designed for nighttime people to sleep there at night, to be there at night. So the perpetrator enters the dwelling not knowing one way or the other whether anybody's there. So he's still guilty, but the fact that nobody's there turns it into not to a crime of moral turpitude, as I understand the argument. My argument is because Florida law defines dwellings so broadly to include things like an unsold and never used RV on a sales lot. So in this case called Bennett, the defendant was pulling things out of, like, Winnebago on a sales lot. And the argument was, does this Winnebago that no one's ever lived in before, during, or after the burglary, does that constitute a dwelling? Which is sort of much broader than what your sort of traditional view of what a dwelling might be. I think of a house in a neighborhood. But in Florida, that's not the case. It can be a structure that no one's literally ever been in, and that's still going to constitute burglary of a dwelling. So if you take that case, Bennett, and you use this realistic probability test, what's the least culpable burglary of an unoccupied dwelling under Florida law? And does that involve moral turpitude? And you compare it to the other dwelling burglaries that have been found in, for example, Uribe in the Fourth Circuit. But a dwelling is a place where people spend the night, would you agree? Not in Florida. Oh, it's not? Not in Florida. In other words, it could just be a vacant house. I mean, no windows or anything else, just a shell of a house. I don't know that a shell of a house that hasn't been lived in for an extended period of time would constitute a dwelling, but something that is designed and can be used, but even though it's never been used for that purpose, an unsold Winnebago on a sales lot is a dwelling in Florida. That would, if you burgled an unused and unsold Winnebago in every other state that's found burglary of a dwelling to be a CIMT, Florida burglary wouldn't constitute burglary of a dwelling in those states. So, for example, in Uribe, they said that Maryland burglary, right, they defined dwelling as a place in which a person regularly So your argument is that in Florida they would run an investigation to determine whether or not the dwelling has ever been occupied. They would. Before you bring the charge. They would. They would do exactly that. Well, they would ask something sort of a little bit different. They would say, was this structure or conveyance to be used? Was it designed to be used as a dwelling? And if so, then it's burglary of a dwelling where that wouldn't hold water in any other state where their burglary statute's been found to be a CIMT. And I think the point is, is that Florida burglary, and I see I'm over my time, Your Honor, so I'll resume. What is the answer to the question? I think there's the special interests and risks that these other courts have found kind of hold to residential burglary. This idea of violating the privacy and security interests of a resident victim. Those don't exist in a Florida burglary. They exist in a New York burglary. They exist in an Oregon burglary. They exist in a Maryland burglary because of the way they define what a dwelling is. Florida defines it so broadly that it takes it out of this categorical umbrella of moral turpitude, and it makes it not a CIMT. And I'd ask the Court to focus on the definition of what Florida calls a dwelling and compare that in a categorical manner to the other crimes that have been found to be a CIMT and find that it's not the same and it's not a CIMT. All right. Thank you very much. You saved your time for rebuttal. Ms. Gordon. Yes. May it please the Court, I'm Virginia Gordon for the United States Attorney General. Your Honor, the Court here appropriately determined that Florida burglary of an unoccupied dwelling is categorically a crime involving moral turpitude. And we have three specific reasons. First, as discussed, it appropriately applied the categorical approach to Section 810.023B because there was no dispute about that being the statute of conviction. But on that first argument, you're putting, I think, you're putting the cart before the horse. Because if you're applying the categorical approach, you're supposed to figure out whether or not the statute is divisible. And if it's not divisible, as I understand it, you're supposed to look at the least culpable conduct to see whether it falls within the ambit of the federal law at issue. And you hear the law defining or setting out crime involving moral turpitude. So you – I think you first have to say or argue that the statute is divisible. Do you not, to get to 3B? Yes, Your Honor, in the traditional sense, if Mr. Lautore had challenged and said we don't think this is a crime involving moral turpitude. But we do have examples where even this court in 2017, an unpublished decision, James Lope has looked at Florida robbery and said in the case there's no dispute that it was this particular subsection. And so the court only analyzed that subsection just as the board had done. But that's wrong. But that's what I'm suggesting to you, Ms. Gordon, is that that is wrong because you're doing the second step before you do the first step. In other words, you don't get to the specific subsection of conviction under the categorical approach unless you figure out that the statute is divisible. Am I wrong about that? No, Your Honor. And it would – I guess it would have been more helpful for the board since the board addressed what it had before. But if we do go back to the broader 810.02 divisibility, it is divisible here. And the reason is quite clear. As Petitioner recognized himself in the reply brief, he identifies a dwelling as a sentencing enhancement. And under MAPIS, a sentencing enhancement is an essential element. And so we can get to divisibility right there. And we can also look forward to case law does make it clear that a dwelling – a burglary of a dwelling is its own crime. There are several cases throughout the 20 years since this particular version of the statute came into play as well as prior to that stating that to convict for burglary of a dwelling, the state must prove knowing entry into a dwelling, knowledge that such entry is without permission or consent, and the criminal intent to commit an offense within the dwelling. One of the cases – I know, but at least one of those cases only talks about dwelling because dwelling was the thing at issue in that case. And so are there any cases indicating that the different types of places that can be burgled in Florida constitute different crimes? What the case has shown, what the jury instruction shows, is that if you have a conviction for burglary, if you want – if a prosecutor wants to get a conviction for burglary of a dwelling, they have to show that the structure was a dwelling, not just – it has to be a dwelling, which is defined as a building used for overnight habitation, including the curtilage. So those – the cases of Florida shows that they can't sustain a conviction or a sentence for burglary of a dwelling without proving that essential element of a dwelling, which then brings you to – and under Mathis, if they have to – if a jury must agree that the person burgled a dwelling, then that is an element, and that is – shows the statute is divisible. But that's only because – but that's only because of what the government charged, right? I mean if you charged burglar of a Winnebago, you would presumably prove at trial that the defendant burgled a Winnebago. If you allege that he burgled a house that is a dwelling, you'd assume the government would try to prove that it was a house that was burgled. How does that show in any way that the statute is divisible? It shows the statute is divisible because under Mathis and this camps and the line of cases of the Supreme Court discussing this, it has to be an element. The item has to be proven. So you can get a crime for burglary of any structure or conveyance without showing what it is and get that level of burglary charge. You have to show it's a structure, certainly. But you cannot have burglary of a dwelling without the prosecution and the – proving beyond a reasonable doubt to a jury that the structure was a dwelling. And, again, that's – and it's identified as a sentence enhancement, and the jury instructions do list it under burglary enhancement. Under Mathis, a sentence enhancement indicates an element. So dwelling is an element because you cannot have a burglary of a dwelling without proving it's a dwelling, the second-degree felony. And Florida cases have overturned burglary of dwelling convictions where the jury was not instructed to agree that the structure was a dwelling. And it's not specific to if it were a house or a motor vehicle used as an overnight habitation. It just has to be a dwelling, not the specific dwelling, but it has to meet that definition. Which shows that it is an element and then can bring to the – to us – Are there – are there any – Ms. Gordon, in one case that Judge Marcus wrote, I forget the name of it now, a couple of years ago, one of the things that the court analyzed – it wasn't a case involving a crime of moral turpitude, but it was the same categorical approach involving a Florida statute. One of the things the panel looked at was double jeopardy decisions in Florida to figure out what the Florida courts had said about multiple convictions for several of the listed prohibited things that you couldn't do. Do you understand what I'm generally saying? Yes, Your Honor. Are there any – are there any double jeopardy decisions in Florida that would help us on this point one way or the other? I'm sorry, Your Honor, I don't have one. I didn't find one, but if the court would like, I would be happy to search again and go deeper and file a 28-J letter. I couldn't find one either. I couldn't find one either, but I was wondering if you had run across any in your research. Right, because if – I did not. If the Florida courts had said that in the same course of events you can be convicted of both burglary of a dwelling but also the conveyance right next to the dwelling without any double jeopardy problems, that would support very strongly, I think, your argument that they are elements and not means. On the other hand, if those things were prohibited by double jeopardy, then it would suggest that they were means and not elements. Yes, and I did look. I apologize. I did not find it, but I'm happy to look again and submit information if I do find something. Okay. Thank you. You're welcome. You have about seven minutes left. Okay. Yes. So if we move on, if the court finds that this is divisible, 810.02, which we believe it is, then we are getting into the issue of if a dwelling – if burglary of a dwelling is morally perpetuitous. And I want to point out that the case state v. Bennett does not definitively indicate that a vacant mobile home on a sales lot is a dwelling. The court specifically said that it theoretically could be, but a prosecutor must prove that it will actually be used for overnight habitation, because the court recognized that a mobile home on a sales lot could very well be converted to be an office by the person who buys it. So the prosecution, to sustain a burglary of an unoccupied dwelling conviction, can't just rely on the fact that it has some furniture in it that could be a bed. They have to prove it will actually be used. And that case was remanded, and there isn't any history on that, so we don't know if the prosecution actually ended up dropping that burglary of a dwelling charge or was able to prove it. Ms. Gordon, let me ask you something else, please, because we had another moral turpitude case earlier during this week, and I want to see your – I want to hear your thoughts on this issue. After the attorney general – after Attorney General Holder vacated Attorney General Mukasey's opinion slash order on crimes of moral turpitude, my understanding is that the board redid the whole moral turpitude test and standard in a case called Matter of Silva Trevino from 2016. Is that your understanding as well, or are we supposed to get the new BIA standard from some other decision that's published? Well, the way my understanding, Your Honor, is that the Silva Trevino still gives us a guide on how we apply the categorical approach to a CIMT and not to look at the least culpable conduct of a statute that's inherently turpitudinous. And in our case here, the board is looking at the violation for a person's ownership interest in their dwelling in this private space if that's morally turpitudinous. But I understand it to still be that we're applying this categorical approach. We're looking just – the conduct that we see cannot be morally turpitudinous. Right. So Silva Trevino does explain all of that, as you just indicated. But it also says that there are two requirements for something to be a crime involving moral turpitude, right? It has to have some intent to defraud or intent to do harm, and it also has to have conduct that is inherently vile, base, unacceptable to society, et cetera, right? Those are the two prongs. Yes. Okay. Yes, Your Honor. How do you satisfy the first prong here? The first prong here satisfies this intent to harm, this reprehensible conduct. It's – the intent to harm is when a person breaks – what the board has said when they've evolved their residential burglary approach, they've said that it's just inherently against what we owe to society to break into someone's private residence, a space that they feel is private. And so there's been an evolution from the point when they issued Matter of M 60 years ago where they looked at just that burglary. They had no occasion to look at residential burglary and acknowledged as much in the case that they were looking at nonresidential and said, well, we don't want someone who is just going into an abandoned warehouse to play cards, which might violate a New York gambling statute. We don't see that as morally turpitudinous. And so they looked at burglary in that way, looking for what were they going to do? What was the crime they were going to commit when they entered for the burglary and – or intended to commit in the burglary itself? But when they started to look at residential burglary in Matter of Lucey and then in Matter of JGDF, the board recognized that there is a special privacy interest in a dwelling that is different from what exists in a structure. And we have court cases where they talk about the sanctity of the home, the importance of the privacy interest that a person has, that that makes that act and it raises it up to morally turpitudinous just because of the fact that you're breaking into a space that should be private and secure and that a person expects to be because it's their home. It's the place where they are intended or designed to sleep at night and that space should be safe. And so that was how they get to the least culpable conduct of having an intent to commit any crime, when you break into the dwelling of another person. They find that it's an inherently – yes. Okay. Thank you. It's an inherently turpitudinous act. And the Ninth Circuit in Diaz-Flores, which my colleague acknowledges in the report, upheld the board's finding in matter of JGDF that residential burglary takes burglary to a different level and that it is inherently morally turpitudinous and that the board's evolution of its case on burglary was reasonable and not inconsistent since matter of act did not consider the fact of a residential burglary. And so if there are no other questions on that, I just want to reiterate before my time is up that if we do then get to the realistic probability, Florida law does – it's not clear that a dwelling designed would actually hit a mobile home on a sales lot, given the language in Bennett. And when we look at Florida case laws that do uphold burglary of a dwelling, they show that it's a place where it's designed for habitation, it has the bed. And as Judge Joppa mentioned before, it wouldn't be a place that's just an empty shell and no windows. There are cases that indicate that it has to have the drywall. It has to have the – it has to show that it's intended. There has to be actual proof that it will be used. And it is very similar to the Oregon and Maryland statute because in Maryland, it just has to be suitable for occupancy if it's been vacant for a certain amount of time. And that's very similar to being designed for overnight occupancy. And in Oregon, it was regularly or intermittently used for sleeping at night. So, again, it may not be used for a certain period of time, but it's designed and it can be used for overnight habitation. And with that, we thank you for your time. And we ask the Court to find that Florida burglary of a dwelling – of an unoccupied dwelling is a crime involving moralitude and deny the petition for review. Thank you. All right. Thank you very much, Ms. Gordon. Mr. Hestrom, you've got your time for rebuttal. Thank you, Judge. So a couple quick points on rebuttal. So I think counsel for the government, Ms. Gordon, she raised an apprendee issue. So there's this line of what I'll very gently call dicta in Mathis that said, if different statutory alternatives carry different punishments, then under apprendee, they must be elements. And so I think the argument is, is because there's different levels of punishment depending on which statutory alternative is involved, then those statutory alternatives must be elements. And I think they couple that with this jury instruction argument that they say, well, in every case, you've got to prove that the structure or conveyance entered was a dwelling. And it's not true. So under the jury instructions, they read, first the jury has to find, it says, do you find beyond a reasonable doubt that the structure or conveyance – well, do you find beyond a reasonable doubt that the defendant entered a structure or conveyance with the intent to commit a crime? And if so, it later asks them, if you find the defendant guilty of Florida burglary, you must also find, was the structure or conveyance a dwelling? Was it occupied? So those are the sentence enhancements that accompany a Florida burglary conviction. But to find a defendant guilty, the prosecutor never has to prove that the structure or conveyance was a dwelling. And I think that's the most important point because under Mathis, how Mathis defines elements is the constituent parts of a crime's legal definition, the things the prosecution must prove to sustain a conviction. Those are elements. The categorical approach deals in convictions. And so a prosecutor can charge 10 out of 10 times the defendant burgled the dwelling of Mary Jean at 123 Main Street. And in every single case, zero out of 10 times will they ever have to prove that the structure or conveyance entered was a dwelling. They'll get their conviction on structure or conveyance. If that thing was a building with a roof over it, you've got your burglary conviction. Whether it's a dwelling is a separate question, and it's a question for sentence enhancements. So they're aggravating factors that go towards sentence enhancements, not towards guilt and conviction. Never have to prove that the structure or conveyance was a dwelling to sustain a conviction so it's not a necessary element. And so that's why I would argue that it's not divisible. And to address the sort of related argument that if you find it's divisible, well, then we're talking about whether or not burglary of an unoccupied dwelling specifically is a CIMT, it's just not. And I don't think Ms. Gordon intended to do this, but she mentioned the Uribe case where the Fourth Circuit was deciding whether Maryland burglary, residential burglary, was a crime involving moral turpitude. And how Maryland defines burglary is a building which is regularly used, not suitable for occupancy, but if you read the opinion, Maryland law defines a dwelling as a structure or conveyance that is regularly used as a place in which to sleep. An unsold and unused Winnebago on a sales lot is not regularly used as a place in which to sleep. It might be one day, but it's not at that point in time. So that burglary is not going to be a residential burglary under Maryland law, although it would be under Florida law. We have another case from the Second Circuit, and I did not cite this in my brief, Your Honors. I found this after I submitted my reply, but I'm happy to do a 28-J letter. The case is Ascensio-Contreras v. Rosen. It's 842 Federal Appendix. It was a January 2021 decision, and in that case— Well, if you're going to give us the site, give us the full site. 842 Federal Appendix what? Well, of course, I don't have it in my outline. I must have just neglected to include it. What's the name of it? So it's Ascensio-Contreras v. Rosen. It's a Second Circuit decision from January 2021. And in that case, the Second Circuit found residential burglary under New York law to be HCIMT. And the way that dwelling is defined under New York law is a building which is usually occupied by a person lodging therein at night. And I even sort of identified this exception under New York law where if the building is large and the crime is committed in a place so remote and inaccessible from the living quarters, that the special dangers inherent in the burglary of a dwelling do not exist. So I guess my point is that all of these cases—JGDF, Ascensio-Contreras, Uribe— they all focused on the special dangers inherent in a residential burglary. And they did so because of the way that either the statute or state decisional law defines what a dwelling is. And they define it such that a resident is going to either be there at the time of the burglary or regularly uses it as a place in which to sleep or is intermittently there. And so you have these special interests and risks of violation of privacy and security of resident victims, which is what CIMTs are designed to prevent harm to vulnerable victims. And in Florida law, you just don't have that with the way that they so broadly define what a dwelling is. And I think, you know, what's typically bad for criminal defendants is usually good for immigration respondents. And that when you define a crime so broadly to cast this wide net over certain conduct, some conduct is going to fall outside of that when you start looking at immigration law and whether or not that crime constitutes a CIMT and lines up with what's been found to be a CIMT in the past. And so because of that, I would ask that this Court vacate the decision of the Board. All right. Thank you very much, Mr. Hedges. Thank you, Ms. Gordon. Come on up. We're ready for the third case. Take your time to get settled in, but let me go ahead and call the case while you do that. Our third case is number 20.